Bradley L. Booke #5-1676
LAW OFFICE OF BRADLEY L. BOOKE
Box 3262
Jackson, Wyoming 83001
702-241-1631
866-297-4863 Fax
brad.booke@lawbooke.com
Attorney for Luis Elizondo

**UNITED STATES DISTRICT COURT**

**DISTRICT OF WYOMING**

| | | |
|---|---|---|
| LUIS ELIZONDO,<br><br>Plaintiff,<br><br>-vs-<br><br><br><br>TUCKER ALGER,<br><br>Defendant. | ) | Case No. ____________________________<br><br>COMPLAINT FOR JUDICIAL DISSOLUTION OF WYOMING LIMITED LIABILITY COMPANY, ACCOUNTING, MONEY DAMAGES, INJUNCTIVE RELIEF, AND DECLARATORY RELIEF |

Plaintiff, through counsel, for his causes of action, alleges as follows:

**NATURE OF CASE**

This is an action for judicial dissolution of nominal Defendant Hotel Juliette LLC, a Wyoming limited liability company; accounting; breach of fiduciary duty, breach of contract and injunctive relief against Defendants Tucker and Haley Alger.

**JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between the Plaintiff and the

Defendants, and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

2. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because all Defendants reside in this district and a substantial part of the events, omissions, and property giving rise to these claims occurred in the District of Wyoming.

**PARTIES**

3. Plaintiff Luis D. Elizondo ("Lue") is a citizen and resident of the State of Maryland.

4. Defendant Tucker Alger ("Tucker") is citizen and resident of the State of Wyoming.

5. **Nominal Defendant Hotel Juliette, LLC is a limited liability company organized** and existing under the laws of the State of Wyoming, doing business as Bombshells American Cantina with its principal place of business located at 58 North Side Creek, Buffalo, Wyoming 82834.

**FACTS COMMON TO ALL CAUSES OF ACTION**

6. Lue was a former military and intelligence officer who had become famous for his role in the revealing the United States government's investigation into the UFO phenomenon as revealed in a 2017 New York Times article.

7. Lue gained prominence as the author of a New York Times bestselling book, "Imminent," published by Harper Collins, as a frequent public speaker, and as a witness before Congress.

8. In 2020, Lue moved with his wife, Jennifer, from San Diego, California to Buffalo, Wyoming.

9. Prior to the events described in this Complaint, Defendant Tucker Alger operated a gym in Buffalo, Wyoming, called the Buffalo Athletic Club.

10. Lue and Tucker met and became friends in April 2023.

11. Thereafter, Lue occasionally employed Tucker to provide security and personal assistance services related to his (Lue's) public appearances and speeches.

12. In addition, Lue and Tucker interacted socially, often centered around Lue's public appearances, and most of the social activities were paid for by Lue.

13. Historically, Lue's family had owned and managed taverns and restaurants, and Lue had a desire to open a patriotic-themed bar that he could decorate with military memorabilia acquired over his career.

14. As a result, Lue and Tucker agreed to open a bar in Buffalo, Wyoming under the name Bombshells American Cantina ("the Cantina"), and agreed to form a Wyoming corporation to own and operate the bar.

15. On or about May 6, 2025, Lue organized Hotel Juliette LLC, a Wyoming limited liability company, to own and operate the Cantina, with each being a 50% member in the LLC. See **Exhibit 1**.

16. Lue and Tucker recognized the need to secure a lease and a liquor license as first steps towards opening the Cantina.

17. Lue found a location in Buffalo, although the building required significant and costly remodeling and upgrades to be an attractive destination and suitable for food and beverage service.

18. Lue had the funds needed to cover the initial cost of the lease and the liquor license, but Tucker did not.

19. Tucker told Lue that, after he (Tucker) sold his mobile home, he would be able to repay Lue for 50% of the purchase price of the liquor license purchase and the deposit on the lease.

20. In reliance on Tucker's promise of repayment, on May 7, 2025, Lue sent Tucker an email agreeing to advance Tucker's 50% share of the cost of purchasing the liquor license and Tucker's 50% share of the first three months' rent of a prospective lease. See **Exhibit 2**.

21. On May 13, 2025, Tucker again reassured Lue that he would be able to repay his share of the liquor license and first three months' rent promptly, sending Lue a text message stating that he (Tucker) would have $150,000 in equity after the sale of his mobile home, from which he would repay Lue for the liquor license and rent. See **Exhibit 3**.

22. Lue and Tucker further agreed that they would split equally management of the Cantina, but that Tucker would be the primary, day-to-day manager during the initial year of operations, because Lue was writing a second book and would need to tour and make public appearances to promote the book.

23. Based on prior speaking and promotional trips with Lue, Tucker was aware of the demands of Lue's publicity obligations and Tucker agreed that he would be at the Cantina every day and would serve as the manager for the first year of operation.

24. In reliance on Tucker's promises and agreements, on May 9, 2025, Lue and Tucker opened two business bank accounts for Hotel Juliette LLC at ANB Bank, 99 South Main Street, Buffalo, Wyoming 82834 ("ANB"), with Lue depositing $500 and Defendant Tucker depositing $250.

25. In reliance on Tucker's promises and agreements, on May 14, 2025, Lue entered an agreement on behalf of Hotel Juliette, LLC to purchase a liquor license from Janny and Raymond Breton, for $50,000--payable $5,000 in earnest money and $45,000 upon approval of the transfer of the liquor license by the City of Buffalo. See **Exhibit 4**.

26. Janny and Ramond Breton ("Lessors") also owned the building in which the Cantina was to be located.

27. In reliance on Tucker's promises and agreements, on May 14, 2025, Lue paid $5,000, from his personal funds, for the benefit of Hotel Juliette LLC, to Janny and Raymond Breton, as earnest money for purchase of the liquor license. See **Exhibit 5.**

28. In reliance on Tucker's promises and agreements, on May 14, 2025, Lue entered a lease (the "Lease"), on behalf of Hotel Juliette, LLC, for a property at 58 North Side Creek, Buffalo, Wyoming, for a term beginning July 1, 2025 and ending on June 30, 2026 at a rental rate of $3,240 per month, with advance payment of first and last month's rent, and a one month's security deposit. See **Exhibit 6**.

29. The Lease included a provision that allowed for a one-year extension of the lease term upon prior notice before the expiration of the term.

30. In reliance on Tucker's promises and agreements, on June 2, 2025, Lue wired $65,000 from his personal account to the Hotel Juliette LLC bank account at ANB. See **Exhibit 7**.

31. On June 5, 2025, Hotel Juliette LLC paid $55,720 to Lessors for the balance then due on the liquor license, and for the first and last month's rent and security deposit for the Lease. See **Exhibit 8.**

32. On June 30, 2025, the Wyoming Liquor Division approved liquor license #70220 for Hotel Juliette LLC. See **Exhibit 9**.

33. Shortly after the Wyoming Liquor Division approved the liquor license, Tucker admitted to Lue that he could not pay either his 50% share of the purchase price of the liquor license or his 50% of three months' rent required to secure the lease. See **Exhibit 10**.

34. The parties took possession of the leased property on July 1, 2025, and began to make improvements in anticipation of an August 1, 2025, grand opening for the Cantina.

35. Hotel Juliette LLC engaged Laura Wuitschick, CPA, to serve as the LLC's bookkeeper and accountant.

36. Despite Tucker's promises and agreements, from the day the Cantina opened, Tucker failed to perform his financial and management duties and obligations to Lue and to Hotel Juliette LLC.

37. Tucker admitted to Lue that he was particularly distracted about the viability of the Buffalo Athletic Club after a competitor opened up in Buffalo and offered 24/7 hours of operation and new equipment, and Tucker stated that many of his clients had left to go to the new gym.

38. Due to Tucker's frequent absences from the Cantina, Lue spent between more than 60 hours per week as the primary manager of the Cantina.

39. Tensions began to arise between Tucker and Lue over the unequal financial and management contributions to the Cantina.

40. Tucker periodically reaffirmed to Lue that he (Tucker) would soon be able to repay Lue for the liquor license, rent, and funds for improvements to enhance the building including a new deck.

41. In September 2025, recognizing that Tucker had misrepresented his financial ability to invest in the Cantina and to be present as a full-time manager, Lue offered to buy out Tucker's membership interest in Hotel Juliette LLC.

42. On October 1, 2025, the Lease for the Cantina was amended to extend the termination date from June 30, 2026, to December 31, 2026 because renewal of the liquor license was contingent upon having an executed renewal through the extended termination date.

43. The Operating Agreement for Hotel Juliette LLC provides, *inter alia*:

a. Each member has a 50% membership interest based on contributions of $40,000 each. (Section 2.2, 6.1);

b. Management is reserved exclusively for the members (Section 3.1);

c. Loans to the company by members shall be repaid prior to any distributions of capital to members (Section 6.2);

d. The members agree to indemnify each other for any violation of the terms of the Operating Agreement (Section 11.3).

e. Dissolution shall be governed by Wyo. Stat. § 17-29-701 (Section 12.1).

See **Exhibit 11.**

44. The minutes for the December 26, 2025 meeting of the Members of Hotel Juliette LLC reflect the approval and ratification of a $130,000 loan from Lue to Hotel Juliette LLC, with the express condition that "This loan is to be repaid prior to any distributions of profits to Members." See **Exhibit 12**.

45. The loan amount included the value of a $36,600 mural that Lue lent to the business.

46. Lue's $130,000 loan was listed in the Chart of Accounts provided to Laura Wuitschick, CPA. See **Exhibit 13**.

47. On March 17, 2026, Lue was involved in a life-threatening motorcycle accident and underwent ten weeks of surgical procedures, including weekly monitoring and ongoing and future treatment to reattach a retina.

48. During Lue's recovery from injuries sustained in the accident, Lue texted Tucker asking for information about the business, but Tucker did not respond.

49. At the end of March 2026, Lue and his spouse decided to move to Maryland to be nearer their adult children.

50. When Tucker finally responded to Lue with, Tucker explained his refusal to have communicated by claiming that he had concerns about statements that unidentified Cantina patrons had made to him (Tucker) about Lue on the night of the incident.

51. On information and belief, Tucker was implying that Lue had been drinking prior to his motorcycle accident.

52. Tucker implicitly threatened to reveal further evidence of alcohol being involved in Lue's motorcycle accident when Lue pressed for information about the Cantina's status and operations.

53. In intimating that he would make disclosures about alcohol involvement in Lue's accident, Tucker was aware that Lue's public profile could be impacted, and Tucker attempted to use leverage to oust Lue from the business.

54. However, the accident report prepared by law enforcement authorities did not identify alcohol as a factor in the accident.

55. On April 21, 2026, Tucker made an unusual cash withdrawal of $2,000 in cash from the ANB bank account, without notice or explanation to Lue. See **Exhibit 14**.

56. On April 29, 2026, Lue sent an email to Tucker proposing to close the Cantina, and Tucker failed to respond. See **Exhibit 15**.

57. On May 7, 2026, an Account Executive with Hotel Juliette LLC's insurance broker, sent a renewal quote for business insurance. See **Exhibit 16**.

58. On or about May 18, 2026, Lue's attorney sent a letter to Tucker proposing to terminate the business of the Cantina and dissolve Hotel Juliette LLC.

59. On May 20, 2026, Tucker sent a text to Lue stating, "I have serious concerns about the events of the incident," referring to Lue's motorcycle accident, and telling Lue to communicate with him only through his attorney, Chris Wages, Esq. See **Exhibit 17**.

60. On May 27, 2026, Lue began a previously-scheduled, two-week speaking tour.

61. On June 4, 2026, Lue called Hotel Juliette LLC's insurance broker to inquire about the insurance renewal quote and asked her to contact Tucker.

62. On or about June 8, 2026, Lue spoke with a representative of Hotel Juliette LLC's insurance broker, who informed Lue that contact with Tucker was made on June 6, 2026, and that Tucker would make the necessary insurance payment.

63. On June 10, 2026, Hotel Juliette LLC received a formal audit request from its insurance broker, as a condition precedent to renewing its liquor liability insurance policy. See **Exhibit 18**.

64. On June 12, 2026, Lue moved to Maryland and purchased a primary residence there.

65. On June 14, 2026, circumventing Hotel Juliette LLC's email account, without notifying Lue, and without discussing terms of the vendor relationship with Lue, Tucker began working with a new food vendor.

66. On June 24, 2026, Laura Wuitschick, CPA, emailed both Lue and Tucker that she had compiled the insurance audit paperwork requested by Hotel Juliette LLC's insurance broker.

67. On June 25, 2026, Tucker responded to the email from Laura Wuitschick advising her that he (Tucker) would contact her (Laura) separately and "bring her up to speed" and that "owners (referring to Lue) have relocated out of state and haven't been involved in operations for more than three months." See **Exhibit 19**.

68. On July 7, 2026, Lue sent an email to Laura Wuitschick, CPA, asking if she knew whether the liquor insurance was renewed, and she stated she did not know.

69. On July 15, 2026, Tucker emailed Laura Wuitschick, CPA, and stated, "Following the incident, Lue and Jennifer relocated and have not participated in the day-to-day operations of the business. There have been opportunities to remain involved in the business had that been their desire. There is also security camera footage from the day and evening of the incident should it become necessary to review the events of that day." See **Exhibit 20**.

70. Tucker's July 15, 2026 email to Laura Wuitschick was a threat to disclose alleged evidence about alcohol being involved in Lue's motorcycle accident to gain leverage against Lue for purposes of trying to oust Lue from Hotel Juliette LLC.

71. In the same July 15, 2026, email to Laura Wuitschick, CPA, Tucker told Ms.Wuitschick, unilaterally and without Lue's authority, that Ms. Wuitschick's accounting firm's services would be terminated in August.

72. On July 30, 2026, without notifying Lue and without any legal authority, Tucker withdrew $4,405.79 and transferred those funds to a new and secret bank account in the name of Hotel Juliet LLC. See **Exhibit 21**.

73. On July 31, 2026, when making an online review of Hotel Juliette LLC's banking information, Lue noticed the unauthorized withdrawal from the LLC's checking account, discovered that a new bank account had been opened, and contacted the bank.

74. On July 31, 2026, Steve Reimann, ANB's Community Bank President emailed Lue stating, "I have reviewed this with the team this morning and we agree that the account is not authorized by the entity's operating agreement. As a result, we are closing the account and reverting the funds to the source." See **Exhibit 22**.

75. On August 17, 2026, Lue contacted Hotel Juliette LLC's insurance broker to determine whether the liquor liability insurance policy had been renewed, and was told that Tucker failed to pay for the new policy and ignored the audit request, which caused the insurance carrier to perform its own audit.

76. Due to Tucker's failure to comply with the audit request, the liquor liability insurance carrier obtained an independent audit at a cost to Hotel Juliette LLC of $3,800.

77. To date, Tucker has not provided Lue with the identity of any new liquor liability insurance for Hotel Juliet LLC.

78. To date, Tucker has not provided Lue with the identity of any new bookkeeping services for Hotel Juliet LLC.

79. To date, Tucker has not provided Lue with any reconciliation statements about the Cantina sales or income, including point-of-sale reports.

80. On August 5, 2026, obtained the mural he had loaned to Hotel Juliet LLC.

81. Lue and Tucker have reached a complete impasse and deadlock in the management and operation of Hotel Juliette LLC.

82. The Members of Hotel Juliette LLC cannot agree on fundamental and necessary business and operating decisions, including but not limited to:

a. The repayment of Lue's loan per the Operating Agreement;

b. The future of the lease at 58 North Side Creek;

c. Management of the day-to-day operations of the Cantina;

d. The dissolution and winding up of the Hotel Juliette LLC.

83. Lue has a good faith concern that Tucker may renew the Lease for Hotel Juliette LLC, without his consent, thereby imposing an unauthorized financial obligation on Lue and creating legal and financial jeopardy for Lue.

84. An extension of the Lease under deadlock conditions would improperly:

a. Bind the LLC to further financial obligations without Lue's consent;

b. Prevent the orderly dissolution and winding up of the LLC;

c. Deplete the LLC's assets, making repayment of Lue's $130,000 loan impossible;

d. Cause irreparable harm to Lue.

85. The deadlock between Lue and Tucker makes it not reasonably practicable to carry on the business of Hotel Juliette LLC in conformity with the Operating Agreement.

86. Lue has no adequate remedy at law and will suffer irreparable harm if Tucker is permitted to extend the Lease or continue managing Hotel Juliette LLC without Lue's consent.

**FIRST CAUSE OF ACTION**

**JUDICIAL DISSOLUTION OF LLC (Wyo. Stat. § 17-29-701)**

87. Plaintiff realleges and incorporates by reference each and every allegation contained in the prior paragraphs as if fully set forth herein.

88. Pursuant to Wyo. Stat. § 17-29-701(a)(iv)(b), courts are empowered to dissolve a limited liability company when it is not reasonably practicable to carry on the business in conformity with the articles of organization and the operating agreement.

89. The deadlock between Lue and Tucker, described above, makes it not reasonably practicable to carry on the business of Hotel Juliette LLC in conformity with the articles of organization and the operating agreement.

90. Plaintiff requests that this Court enter an order dissolving Hotel Juliette LLC and appointing a liquidating trustee to wind up the affairs of the LLC in accordance with Wyo. Stat. § 17-29-702.

. . . . .

. . . . .

. . . . .

**SECOND CAUSE OF ACTION**

**ACCOUNTING AND REPAYMENT OF LOAN**

91. Plaintiff realleges and incorporates by reference each and every allegation contained in the prior paragraphs as if fully set forth herein.

92. Pursuant to the Operating Agreement (Section 6.2) and the organizational minutes, Lue's $130,000 loan to Hotel Juliette LLC must be repaid prior to any distributions of capital or profits to members.

93. Lue obtained the mural, valued $36,600, from the Cantina, thereby reducing the loan amount now due to Lue to $93,400.

94. Defendant Tucker has refused to account for the LLC's assets or to repay Lue's remaining loan of $93,400.

95. Lue respectfully requests that this Court:

a. Order an accounting of all assets, liabilities, and financial transactions of Hotel Juliette LLC;

b. Order the repayment of Plaintiff's $130,000 loan from the LLC's assets;

c. Enjoin any distributions of profits or capital to Tucker until Lue's loan is repaid in full.

**THIRD CAUSE OF ACTION**

**BREACH OF FIDUCIARY DUTY**

96. Plaintiff realleges and incorporates by reference each and every allegation contained in the prior paragraphs as if fully set forth herein.

97. As a Member and Manager of Hotel Juliette LLC, Tucker owes fiduciary duties to Lue and to the LLC, including the duties of care and loyalty under Wyo. Stat. § 17-29-409.

98. Tucker has breached his fiduciary duties by:

a. Refusing to cooperate in the repayment of Lue's $130,000 loan;

b. Failing to act in the best interests of the LLC and its members;

c. Refusing to dissolve the business despite the impasse and deadlock;

d. Terminating the bookkeeping and accounting services for the business;

e. Opening an undisclosed business bank account;

f. Failing to comply with an insurance audit request;

g. Using extortionate threats of revealing alleged alcohol use relating to Lue's motorcycle accident to oust Lue from the Cantina and Hotel Juliette LLC.

99. Plaintiff respectfully requests this Court:

a. Find that Defendant has breached his fiduciary duties;

b. Order Defendant to cease and desist from any further unilateral actions on behalf of the LLC;

c. Award Plaintiff compensatory and punitive damages in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**

**BREACH OF CONTRACT**

**(Against Defendants Tucker and Haley Alger)**

100. Plaintiff realleges and incorporates by reference each and every allegation contained in the prior paragraphs as if fully set forth herein.

101. On May 7, 2025, Lue and Tucker entered into a binding, written agreement via email regarding the purchase and ownership of the liquor license (subsequently issued as License No. 70220) and the initial lease of the real property located at 58 North Side Creek, Buffalo, Wyoming 82834.

102. Pursuant to the express terms of the May 7, 2025, agreement, Lue agreed to advance one hundred percent (100%) of the funds required to purchase the liquor license and to pay the rental and deposit costs required to secure the Lease.

103. In exchange for Lue advancing these acquisition and start-up costs, Tucker explicitly and in writing contracted and promised to reimburse Lue for fifty percent (50%) of the liquor license purchase price ($25,000.00) and fifty percent (50%) of the initial Lease costs($4,860.00, representing half of the $3,240.00 monthly rental rate for July, August, and September 2025), totaling $29,860.00.

104. The reimbursement was agreed to be payable from the proceeds of the sale of Tucker's mobile home.

105. Lue fully performed all of his duties and obligations under the contract by advancing the necessary funds, including: paying $5,000.00 in earnest money for the liquor license to Janny and Raymond Breton on May 14, 2025; making a personal wire transfer of $65,000.00 to the Hotel Juliette LLC checking account on June 2, 2025; and executing the final payment of $55,720.00 via LLC check #1022 on June 5, 2025, to complete the liquor license acquisition and to secure the lease.

106. To date, and despite repeated demands for payment, Tucker has failed, refused, and continues to refuse to perform under the contact, thereby committing a material and total breach of the May 7, 2025, written contract.

107. As a direct and proximate result of Tucker's breach, Lue has suffered direct, non-LLC personal damages in the principal sum of $29,860.00, which remains unpaid and outstanding.

**FIFTH CAUSE OF ACTION**

**DECLARATORY JUDGMENT**

108. Plaintiff realleges and incorporates by reference each and every allegation contained in the prior paragraphs as if fully set forth herein.

109. A present and actual controversy exists between Lue and Tucker with respect to their legal rights, duties, and obligations under the Articles of Organization and Operating Agreement with respect to:

a. The right to dissolve Hotel Juliette LLC;

b. The repayment of Lue's $130,000 loan;

c. The authority to extend the lease at 58 North Side Creek.

110. Plaintiff requests this Court:

a. Declare that it is not reasonably practicable to carry on the business of Hotel Juliette LLC;

b. Declare that Lue is entitled to repayment of his $130,000 loan prior to any distributions to members;

c. Declare that Defendant lacks authority to unilaterally extend the Lease on behalf of the LLC.

d. Preliminarily enjoin Tucker, and all other acting in concert with Tucker, from the actions described above, pending the final resolution of this action.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

A. Dissolve Hotel Juliette LLC pursuant to Wyo. Stat. § 17-29-701 and appoint a liquidating trustee to wind up its affairs;

B. Issue a Preliminary Injunction restraining Defendant from the actions described above pending dissolution of Hotel Juliette LLC;

C. Order an accounting of all assets, liabilities, and financial transactions of nominal Defendant Hotel Juliette LLC;

D. Order the repayment of Plaintiff's $130,000 loan from the LLC's assets;

E. Declare that Defendant lacks authority to unilaterally extend the Lease or bind the LLC to further obligations;

F. Award Plaintiff compensatory and punitive damages for Defendant's breach of fiduciary duty;

G. Award Plaintiff damages for Defendant's breach of contract and failure to repay the personal loan;

H. Award Plaintiff his costs and attorney fees incurred in bringing this action; and

I. Grant any other relief that the Court deems just and proper under the circumstances.

Dated this 8th day of September 2026.

/s/ Bradley L. Booke
Bradley L. Booke #5-1676
LAW OFFICE OF BRADLEY L. BOOKE
Box 3262
Jackson, Wyoming 83001
702-241-1631
866-297-4863 Fax

brad.booke@lawbooke.com
Attorney for Luis Elizondo