# COMMERCIAL LEASE

**THIS LEASE**, entered between Janny and Raymond Breton, whose address is 46 Sand Creek Drive, Buffalo Wyoming 82834, hereinafter referred to as "Lessor", and Hotel Juliette, LLC, a Wyoming corporation d/b/a/ Bombshells American Cantina whose address is 506 Sourdough Street, Buffalo, WY 82834, hereinafter referred to as "Lessee".

**WITNESSETH**: In consideration of the mutual agreements herein contained, the parties hereto agree as follows:

1. **PROPERTY DESCRIPTION**. Lessor is the owner of the following described real properties and improvements therein in the City of Buffalo, Johnson County, State of Wyoming, and addressed as 58 North Side Creek, Buffalo, Wyoming, to-wit (hereinafter collectively "Property or Premises").

Lessor hereby leases to Lessee approximately 3,240+/- square feet of building area and the property wherein it is situated, addressed as 58 North Side Creek, Buffalo, Wyoming, the Property described above (hereinafter referred to as "Property or Premises"). Said Premises being designated on Exhibit "A" attached hereto. Also included in the lease are all existing furnishings, (indoor and outdoor) mechanical equipment (coolers, refrigerators, dishwasher, etc.) used in the normal operation of a bar and tavern business. Lessor has no responsibility to repair / replace / restock equipment that may fail due to normal wear and tear or breakage.

2. **TERM**. Lessor hereby leases the Premises to Lessee, at the rental rate and upon the terms and conditions herein stated, for the term of **One (1) year, beginning July 1, 2025 and ending June 30, 2026.** This lease is contingent upon the successful purchase and transfer of Lessor's existing Retail Liquor License to Lessee or one of its officers, and the ability to obtain Liquor Liability Insurance. Should a liquor license not be approved or otherwise accepted by city officials and/or the inability to obtain liquor liability insurance through no fault of the Lessee, this lease shall be considered null and void. **Lessee shall apply for liquor liability insurance prior to approval of the retail liquor license. Copies of such certificates shall be provided to Lessor prior to Lessee taking possession of the Premises.**

3. **BASE RENT**. Lessee hereby agrees to pay to Lessor, as base rent for the Premises, the sum of **Three Thousand, Two Hundred, Forty and 00/100 Dollars ($ 3,240.00)** payable in monthly installments in advance on the first day of each calendar month during said term from **July 1, 2025** to **June 30, 2026**, unless the full purchase of the Property is completed prior to the end of the lease term. Lessee shall provide to Lessor first and last month's rent upon the signing of this lease. Security Deposit shall be provided to the Lessor in accordance with **Paragraph 6.**

Said payments shall be made by direct deposit, checks or drafts payable to Janny and or Raymond Breton, and mailed to 46 Sand Creek Drive, Buffalo, WY, 82834, or by direct deposit, checks or drafts made payable to any other payee or mailed to any other address which Lessor, or

EXHIBIT 6

any successor in interest of Lessor, may designate in writing. The rent for any fractional calendar month shall be prorated and paid on the first day of such fractional month.

4. **UTILITY CHARGES**. Lessee shall pay all charges for transfers and usage of electricity, telephone, natural gas, internet, water, sewer and trash pick-up services, supplied to and for the Premises and shall separately contract with the appropriate parties for such services.

5. **TAXES AND ASSESSMENTS**. In addition to the base rent set forth in **Paragraph 3** above, Lessee shall pay all taxes, assessments, or other governmental charges which are levied or assessed and due against the Property (such as County Business Personal Property Tax) which relate to the original term or any optional term of this lease, **including one-half of the general property real estate taxes**. As to any such taxes or assessments which are to be levied or assessed after the initial or any optional term of this lease ceases and which relate to the period during the term of this lease, the Lessee shall pay to Lessor, on or before the last day of the lease, an amount equal to the prorated portion of the year occupied by the Lessee, which calculation shall be based upon the most recent levy and evaluation information available. Lessor warrants that there are no delinquent taxes or special assessments which constitute liens against the Property.

In the event special improvements are installed during the original term or extension of this lease, which result in special assessments or taxes being levied against the Property, the Lessee agrees to pay 100% of all such installments, including interest, as they become due, during the term of this lease. Any installments of principal and interest payable any year after which the lease terminates shall be the responsibility of the Lessor.

Lessee shall pay its share of the above-referenced taxes and/or assessments in advance in monthly installments equal to one-twelfth (1/12) of Lessee's estimated annual share, or as otherwise prescribed by Lessor. That exact share shall be calculated during December of each year and any amount needed to equalize the amount owing shall be paid with or credited to the January payment and shall continue during the next calendar year.

In addition to the foregoing, Lessee shall pay and cause to be paid promptly, and before the same becomes delinquent, all taxes and assessments levied against the personal property, trade fixtures, equipment or leasehold improvements placed by or being used by Lessee on or about the leased Premises, regardless of ownership, and all other expenses incidental to Lessee's use thereof and the operation of Lessee's business therein.

6. **SECURITY DEPOSIT**. Lessee shall provide to Lessor a security deposit equal to one month's rent to be held by Lessor throughout the term of the lease. Security deposit will be used for the purpose of any repairs to the Premises required to be made during the term of the lease or after the lease has expired or has been terminated. Should any or all of the Security Deposit be used during the term of the lease, Lessee shall reimburse the Lessor for the amount used for repairs, at the next scheduled rent payment date. Security Deposit will be refunded to Lessee 30 days after the termination of the lease, less any funds used or to be used to effect necessary repairs. Additionally, Security Deposit may be used as additional rent should Lessee default on monthly rent payment.

7. **OPTION TO PURCHASE**. Should Lessee decide to purchase the Premises before the expiration of the lease, Lessee will have first right of refusal, as stated in **Paragraph 29**, may purchase the Property, prior to the expiration of the Lease. Lessor and Lessee have agreed to a purchase price as of the signing of this Lease. A separate Purchase and Sales Agreement shall be drafted for this purpose.

8. **SIGNAGE**. Lessee may install outside of the Premises, at its own expense, such signage as it shall deem necessary or desirable for the conduct of its business with the approval of Lessor as well as the City of Buffalo. Lessee shall remove all such signage upon termination of the lease unless Lessor consents to Lessee leaving it at the Premises. Any damage caused to the Premises by the removal of personal property shall be repaired by Lessee at its expense.

9. **INSTALLATION AND REMOVAL OF FIXTURES; PAINTING, ETC**. Lessee may place or install inside the Premises such fixtures and equipment as it shall deem necessary or desirable for the conduct of its business therein. Trade fixtures and equipment placed by Lessee in said Premises shall not become a part of the real estate but shall retain their status as personal property and may be replaced by Lessee at any time. Lessee shall remove all such fixtures upon termination of the lease unless Lessor consents to Lessee leaving them on the Premises. Any damage caused the Premises by the removal of personal property shall be repaired to the satisfaction of the Lessor by Lessee at its expense. Lessee may, with advance consent of Lessor, provide any desired window treatment so long as the same will not, in Landlord's reasonable discretion, adversely affect the appearance of the building from the outside.

10. **INDEMNIFICATION OF LESSOR BY LESSEE**. Lessee shall obtain General Liability Insurance to cover their activities and operations on the Property with the Lessee naming Lessor as an additional named insured. **The policy limit of said insurance shall be a minimum of $1,000,000.00.** Lessor and Lessee agree to indemnify and hold each other harmless from and against any and all demands, liability, loss, costs, damage, or expense of whatever nature and kind, including counsel fees, which either party may sustain by virtue of the actions of the other in connection with their use of the Property, to the extent the same is not covered by insurance as required above. Lessor's costs for such insurance shall be charged to Lessee in the manner set out in **Paragraph 18** hereof as additional rent. **Lessee shall provide Lessor copies of all insurance certificates, naming Lessor as additional insured, limits of coverage as well as beginning and expiration dates.**

11. **REPAIRS, ALTERATIONS AND IMPROVEMENTS; ADDITIONAL RENT; STATE OF REPAIR ON TERMINATION**. Lessee has inspected the Premises and agrees to accept the same as shown condition, subject only to the following improvements to be completed by Lessor:

Lessor will arrange, pay for and complete the following improvements:

None

Lessor acknowledges that the roof of subject Property is in good and serviceable condition and is free of any leaks or damage that could result in a compromise of its performance. Should Lessee need to breach the roof for ventilation or other purposes related to its operations, Lessee shall bear full responsibility to cause and maintain water-tight penetrations through the roof of the Premises.

Lessee agrees that, except as stated above, Lessor shall be under no obligation to remodel, improve, rebuild, replace, maintain or make any repairs to the Premises, equipment or operational items (such as glassware, etc.), or to the improvements thereon prior to the commencement of the Lease. Except as provided in **Paragraph 16** hereof, Lessee agrees to make all necessary repairs and perform all necessary maintenance to the leased premises and equipment during the term of this lease; provided, however, Lessee's liability for repairs to the existing HVAC systems shall not exceed **Two Thousand dollars ($2,000.00)** in any 12 month period commencing with the starting date of this lease. Lessee shall contract for the performance of periodic maintenance of the HVAC system, including quarterly filter exchange. Lessee shall provide copies of the maintenance activities to the Lessor after the maintenance has been completed. General repairs to the building (such as plumbing, electrical, interior and exterior walls, ceilings, glass breakage, etc.) shall be the responsibility of the Lessee. Existing glassware replacement is the responsibility of the Lessee.

Lessor agrees to the following remodeling by Lessee, at Lessee's discretion and expense:

- Painting of interior walls and ceilings of premises, except for areas of exposed wood,
- Repainting of exterior wood front wall and windows,
- Installing desired floor coverings,
- Installing desired ceiling treatments,
- Installing desired window treatments,
- Installation of kitchen equipment (including venting and fire suppression systems);
- Installing desired lighting,
- Installing necessary or additional HVAC,
- Completing any needed electrical wiring for new equipment, outlets, sound and/or security systems

At the expiration or termination of this lease, or any extension or renewal thereof, Lessee shall leave the Premises in good condition, ordinary wear and tear excepted. Lessee agrees that it will not permit any mechanic's, materialmen's, or other liens to stand against the Property for work or materials furnished to Lessee in connection with any alterations, maintenance, repairs, remodeling, additions or new construction which may be authorized by this Lease. Provided, however, Lessee shall have the right to contest the validity of any such lien or claim, pending such determination. Lessee shall follow the procedures of Wyoming Revised Statutes to substitute collateral and cause the discharge of said lien.

**12. <u>ASSIGNMENT OF LEASE</u>**. Without the previous written consent of the Lessor, neither the Lessee, nor the Lessee's legal representatives or successors in interest by operation of law or otherwise, shall assign or mortgage this Lease. Under no circumstances shall Lessee sublet the

whole or any part of the Premises. Any act of the Lessee whereby any of the interests of the Lessee under this Lease is purported to be transferred without the written consent of the Lessor, shall constitute a breach of this agreement. Any consent by the Lessor to any act of assignment shall be held to apply only to the specific transaction thereby authorized. Such consent shall not be construed as a waiver of the duty of the Lessee, or of the legal representatives or assigns of the Lessee, to obtain from the Lessor consent to any other or subsequent assignment, or as modifying or limiting the rights of the Lessor under the foregoing covenant by the Lessee not to assign without such consent. If this Lease be assigned, the Lessor may and is hereby empowered to collect rent from the assignee.

If the Premises or any part thereof be underlet or occupied by any person or corporation other than the Lessee, the Lessor, in the event of the Lessee's default, may, and is hereby empowered to, collect rent from the under-tenant or occupant; in either of such events, the Lessor may apply the net amount received by it to the rent reserved, and no such collection shall be deemed a waiver of the covenant herein against assignment and underletting, or the acceptance of the assignee, under-tenant, or occupant as tenant, or a release of the Lessee from the further performance of the covenants herein contained on the part of the Lessee. In the event consent is given by the Lessor to any such assignment by the Lessee, such consent will not constitute a release of the Lessee from any of its duties, obligations or liabilities hereunder unless specifically so stated in writing in the consent. **A sale or transfer of 25% or more of the ownership in the Lessee to persons other than the current Lessor shall constitute an assignment requiring consent hereunder.**

**13. HOLDING OVER**. If Lessee holds over or remains in possession of the Premises after expiration of this lease or after any sooner termination thereof, without any new lease of said Premises being entered into between the parties hereto, or any option hereinafter contained being exercised by written notice, such holding over or continued possession shall, if rent is paid by Lessee, and accepted by Lessor, for or during any period of time Lessee holds over or remains in possession, create a tenancy from month to month only at the last monthly rental and upon the terms, other than length of term, herein specified, which may at any time be terminated by either party by thirty (30) days written notice given to the other party.

**14. PEACEFUL POSSESSION**. Lessor covenants that Lessor is seized of the Premises and has full right to make this lease, and that Lessee shall have quiet and peaceful possession of the Premises during all of said term as against lawful acts of third parties and as against the acts of all parties claiming title to, or a right to the possession of the Premises. Lessee shall not allow any excessive and unreasonable noise to continue that might disrupt the peace and well-being of nearby residents.

**15. BREACH OF COVENANT BY LESSEE**. If Lessee shall fail to pay the rent reserved herein when the same becomes due and payable, or if the Lessee shall fail to keep, observe or perform any other covenant, condition or obligation of this Lease on the Lessee's part to be kept or performed Lessee shall have ten (10) days to cure any such covenant. As used herein, rent shall include base rent provided for in **Paragraph 3 or 19** and additional rent provided for in **Paragraphs 5, 10 and 18** hereof. If the same cannot be cured in ten (10) days with reasonable diligence, or if Lessee shall abandon the Premises (a period of two (2) weeks absence while the tenant shall be in default in rent shall be deemed an abandonment for the purposes of this lease), Lessor, in addition to

all other rights and remedies the Lessor may have either at law or in equity, shall have the option to do any one or more of the following:

a. Immediately re-enter and remove all persons and property from the Premises, storing said personal property in a public warehouse or elsewhere at the cost of, and for the account of, the Lessee; no such re-entry or taking possession of the Premises by the Lessor shall be construed as an election on the part of the Lessor to terminate this Lease unless a written notice of such intention is given by the Lessor to the Lessee;

b. To declare all rents owing during the remaining term of this lease immediately due and payable and to collect by suit or otherwise such accelerated rental, or to enforce by suit or otherwise, any other term or provision hereof on the part of the Lessee required to be kept or performed; and

c. Terminate this Lease, in which event Lessee agrees to surrender immediate possession of the Premises, and to pay to Lessor, in addition to all other sums to which the Lessor may be entitled, all damages suffered by Lessor by reason of Lessee's default, including without limitation the cost of recovering the Premises.

In the event that any personal property remains upon the Premises upon termination of this Lease or upon re-entry by Lessor under rights given to Lessor by this Lease, the same shall become the property of Lessor, at Lessor's option.

**16. DAMAGE BY FIRE, ETC**. Lessor and Lessee agree that it will, during the term hereof, or any optional term, keep in effect upon the Property, fire and casualty insurance with extended coverage endorsement, written by a responsible insurance company or insurance companies authorized to do an insurance business in the State in which the Property is located, in an amount equal to not less than 80% of the replacement cost of the building and permanent improvements thereon. Said policy or policies of insurance shall provide that payment for any losses covered under or by said policy or policies of insurance shall be made to Lessor. If during the term of this lease agreement, or any extension thereof, the building which is the subject of this lease (whether or not totally rented by Lessee) shall be substantially damaged or destroyed by fire, casualty or other cause, and if said damage cannot be repaired within 120 days of such casualty, then this lease agreement may be terminated at the election of either party with written notice to Lessor within thirty (30) days from the date of the casualty. If Lessee elects to terminate the lease hereunder, all insurance proceeds for damage to the Property shall be paid to Lessor, and the Lessee shall have no further liability to Lessor hereunder. Lessor shall have no other or further claim to any insurance proceeds which Lessee may have on its trade fixtures, machinery, personal property or business interruption.

If the Lessee does not elect to terminate this lease following substantial damage as hereinabove provided, and if Lessor in its sole discretion decides to rebuild the building and improvements, or if the Property shall be otherwise partially damaged or destroyed by fire, casualty or other cause, but shall remain usable by Lessee, any insurance proceeds payable as a result of such damage or destruction shall be used by Lessor to rebuild and repair the Premises. Liability of the

Lessor to restore the Premises shall in no event exceed the amount of insurance proceeds payable to Lessor as a result of fire, casualty or other causes.

Lessor's cost of the foregoing insurance shall be charged to Lessee in the manner set out in **Paragraph 18** hereof.

**17. CONDEMNATION**. If any part of the Premises shall be taken or condemned for public use, and a part thereof remains which is susceptible of occupation hereunder, this lease shall, as to the part taken, terminate as of the date the condemner acquires possession, and thereafter Lessee shall be required to pay such proportion of the rent for the remaining term as the leased area of the Premises remaining bears to the total leased area of the Premises at the date of condemnation. If such portion is condemned that the remainder is not susceptible for use hereunder, this lease shall terminate upon the date which the condemner acquires possession. A condemnation of a part of the Property for street purposes which does not take any part of the building or reduce the parking area so that it is out of compliance with local ordinances, shall not entitle Lessee to any reduction of rent. All sums which may be payable on account of any condemnation shall belong to the Lessor, and Lessee shall not be entitled to any part thereof, provided, however, that Lessee shall be entitled to retain any amount awarded to it for its trade fixtures or moving expenses.

**18. AREA MAINTENANCE, TAXES, ASSESSMENTS, AND INSURANCE.** As additional rent, the Lessee shall pay to Lessor, on a quarterly or annual basis, and/or within 10 days of receipt of a bill from Lessor, the following amounts:

a. 50% of the cost of Commercial Property, Fire and Casualty insurance referred to in **Paragraphs 10 and 16.**

b. Taxes and special assessments referred to in **Paragraph 5**.

a. 100% of the cost for General and Liquor Liability insurances referred to in **Paragraphs 2 and 10**.

c. 100% of the additional rent as prescribed in **Paragraph 11.**

d. Lessee shall be responsible for removing ice and snow from the sidewalks and parking area immediately adjacent to the entrances/exits to/from the Premises and keeping roof, rain gutters and downspouts cleared of leaves and debris.

**19. NOTICES TO LESSOR OR LESSEE**. All notices to be given to Lessee shall be effective if given in writing personally or by depositing the same in the United States mail, postage prepaid, certified, and addressed to Lessee at the demised premises, 58 North Side Creek, Buffalo, WY 82834, whether or not Lessee has departed from, abandoned or vacated the premises. All notices to be given to Lessor shall be given in writing personally or by depositing the same in the United States mail, postage prepaid, certified, and addressed to the Lessor at the place designated by Lessor for the payment of rent, or at such other place or places as may be designated in writing from time to time by the Lessor. Notice may also be given to Lessee at the address stated in the introductory paragraph of this Lease.

20. **OPTION TO RENEW**. Lessee shall have the right to extend the original term of this lease for an additional term of **One (1) year** (the "optional" term). To exercise such right, Lessee shall provide Lessor with a written notice, **at least 3 months prior to the expiration** of the original term, that the Lessee would like to extend the lease term. Should Lessor agree to the extension, all of the terms, covenants and conditions of this lease shall remain in effect during the optional term, except that the base rent may be adjusted **by not more than +10%,** payable in monthly installments in advance on the first day of each calendar month during the optional term.

21. **LESSOR'S REMEDIES**. No remedy herein conferred upon or reserved to Lessor is intended to be exclusive, but each shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity.

22. **PARAGRAPH HEADINGS**. The paragraph headings herein contained are inserted only as a matter of convenience and for reference and in no way define, limit, or describe the scope or intent of this lease nor in any way affect the terms and provisions hereof.

23. **USE OF PREMISES.** Lessee agrees that the leased premises shall be used for a bar, tavern and/or restaurant, which includes the sale of Alcoholic and Malt Beverages.

24. **POSSESSION.** Upon signing this lease, and upon Lessor completing its work as described in **Paragraph 11**, Lessee shall have the right to enter the premises for the purpose of remodeling and installing Lessee's desired trade fixtures. All such remodeling and installation shall be at Lessee's cost. Upon entering the premises, Lessee's obligations under **all Paragraphs** hereof shall commence.

25. **COMPLIANCE WITH LAWS, CODES AND ORDINANCES**. Lessee agrees to comply with all statutes, ordinances and regulations of any governmental body, whether municipal, state or federal which affect Lessee's use and occupancy of the leased premises. Lessee agrees that Lessor has made no representation to Lessee as to the current compliance of the premises with such statutes, ordinances and regulations. Any maintenance, repair or alteration which may now or hereafter be required by such statute, ordinance or regulation shall be performed by Lessee at its sole expense.

26. **LATE PAYMENT CHARGE.** If a monthly rental payment is not paid when it is due, Lessee shall also pay a late charge equal to 5% of the monthly rental. In addition, all rental which is 30 days past due shall accrue interest at the rate of 14% per annum.

27. **ACCESS BY LESSOR.** Lessor shall have the right to inspect the premises at all reasonable times. During the last three (3) months of any lease term, Lessor may post in or about the Premises "For Rent" signs and enter upon and exhibit the Premises to prospective tenants or purchasers. In the event of liability or damages discovered during Lessor's access, the provisions of **Paragraph 6** hereof shall be applicable.

28. **AMENDMENT OF LEASE.** This Lease may only be modified by a written instrument executed by Lessor and Lessee.

29. **NOTICE OF SALE BY LESSOR.** If at any time during the original or optional term of the lease, Lessor desires to sell the Property, Lessor agrees to notify Lessee of Lessor's intention prior to soliciting any offer to purchase and immediately upon receipt of any unsolicited offer to purchase.

30. **RIGHT OF FIRST REFUSAL.** If during the Term of this Agreement, Lessor receives a bona fide arm's length offer to purchase the Property, which Lessor is willing to accept, Lessor shall promptly give written notice to Lessee of the terms and conditions of such offer and Lessee shall during the next thirty (30) days, have the right of first refusal to purchase the Property, as the case may be, for the same price and upon the terms and conditions contained in the said offer.

31. **ENTIRE AGREEMENT.** This Lease contains the entire agreement between the Lessee and the Lessor relating to the leasing of the demised premises and supersedes all prior agreements; no representation which is not incorporated herein shall be binding upon Lessor, and all representations which have been made are incorporated herein or, if not so incorporated, shall be deemed to have been waived by the Lessee; and all preliminary negotiations between the parties are merged into, and superseded by, the provisions of this Lease,

**"LESSOR"**

Janny and Raymond Breton

By: Janny Breton

Raymond C Breton,

Managing Partner/Owner

**"LESSEE"**

Hotel Julliette, LLC

By:

By:

, Managing Member(s)

STATE OF WYOMING

) ss:

JOHNSON COUNTY

Before me, a Notary Public, in and for said county, personally came, Janny and Raymond Breton, known to me to be the Managing Member(s)/Owners of the property described herein, and the identical persons who signed the foregoing Lease and acknowledged the execution thereof to be their voluntary act and deed on behalf of the Company as Lessor.

Witness my hand and notarial seal May 14th, 2025.

E STEWART
Notary Public - State of Wyoming
Commission ID # 161027
My Commission Expires
December 29, 2027

EStewart

Notary Public

STATE OF WYOMING

) ss:

JOHNSON COUNTY

Before me, a notary public, in and for said county, personally came, Luis Daniel Elizondo Jr & Tucker Michael Alger, known to me to be the managing member of Hotel Julliette, LLC, a Wyoming Limited Liability Company, and the identical persons who signed the foregoing Lease and acknowledged the execution thereof to be their voluntary act and deed on behalf of the Company as Lessee.

Witness my hand and notarial seal May 14th, 2025.

EStewart

Notary Public

E STEWART
Notary Public - State of Wyoming
Commission ID # 161027
My Commission Expires
December 29, 2027

**Exhibit A**
**Leased Premises**

